A98A1317. IN THE INTEREST OF M. O. et al., children.
(503 SE2d 362)

ELDRIDGE, Judge.

Appellant Djonga Y'Ometete B. challenges the DeKalb County Juvenile Court's determination that his three children are deprived. We affirm.

The evidence, as presented during an October 1995 adjudicatory hearing and viewed in the light most favorable to the trial court's judgment, shows the following: in September 1995, the appellant came to Georgia from Zaire, Africa, with his three children,[1] M. O.,

---

[1] The mother of M. O. and P. S. and the mother of C. O. both live in Zaire, Africa, and were notified of these proceedings by certified mail. However, the legal relationship between the appellant and the children is unclear. According to the appellant's brief, C. O. is the appellant's biological child, while M. O. and P. S. are his sister-in-law and brother-in-law, respectively. In other words, M. O. and P. S. are the siblings of his wife, C. O.'s mother. This information apparently was not discovered until after the October 1995 adjudication of deprivation. Accordingly, this Court will not address this issue herein. However, the apparent confusion regarding the appellant's legal relationship to the children may be relevant, if not dispositive, in future reunification efforts or permanent custody dispositions. Further complicating this matter is the potential effect of the appellant's subsequent incarceration on his immigration status as a political refugee and, therefore, the impact on any future *permanent*

P. S. and C. O. None of the parties speaks English; the children speak Swahili and the appellant speaks French.

Within a week of their arrival, the appellant entered the bedroom of M. O., who was 13 years old, in the middle of the night and demanded sexual intercourse. M. O. also claimed that the appellant had made similar sexual advances while they lived in Zaire and previously during their brief stay in Georgia. However, when she refused his advances on this occasion, he threatened her with a knife and ordered her to take off her clothes. She resisted and was, in the process, "pierced" with the knife. The appellant left the room briefly and she attempted to escape the apartment. The appellant confronted M. O. and pushed her down, injuring her knee. Still, she ran from the apartment and asked a neighbor to call the police. When the police arrived, the appellant told them that there was nothing wrong and prevented the child from speaking to the officers. The next day, the appellant asked M. O. and her brother, P. S., for forgiveness and told them that this was a family matter that should not be discussed outside the family.

It is unclear from the record on appeal exactly how the DeKalb County Department of Family & Children Services ("DFACS") eventually gained custody of the children. The transcript of the October 1995 adjudicatory hearing shows that two translators were provided — a French-speaking interpreter for the appellant and a Swahili-speaking interpreter for the children. In addition, the trial court allowed a French-speaking friend of the appellant to remain in the courtroom during the proceedings to assist the appellant as needed.

During the hearing, M. O. testified to the facts as presented above. However, following the appellant's cross-examination of M. O., appellant's counsel requested from the court "two minutes in private" with his client. When the interpreter asked if he was needed, counsel responded that "It wouldn't hurt if I had somebody to facilitate a quick communication."

Minutes later, counsel announced that he had no further questions for the witness. Once M. O. was excused as a witness, the following colloquy took place: Defense Counsel: "These are hard cases. We've talked about, my client and I have talked about this case and we see no further point in trying to defend at this stage and would stipulate that the Court certainly has enough evidence to be able to find deprivation and they are welcome to bring witnesses up if they want to, but we would stipulate at this stage." Court: "Alright, well, [Prosecutor]? There may be some reasons why you want to continue,

---

adjudication of his parental or custodial rights, as well as the permanent custody status of the children.

to get some facts on the record, and what I hear you (referring to Defense Counsel) saying is that you are not going to put up a case? Is that correct?" Defense Counsel: "That's correct." When the State inquired whether appellant was stipulating to the facts as presented in the deprivation petition, the following transpired: Defense Counsel: "I think that there is nothing we can do at this stage and I don't see any prospects of, um, of negating that other. If we had a way, I would do it." Court: "Well let me ask you this. Would you be prepared to say that based upon this testimony and upon the petition, that if further facts were shown, that they would support the allegations contained in both petitions?" Defense Counsel: "Yes, Your Honor." State: "I don't see any point in going on with that." The children's advocate also stated on the record that, given the appellant's stipulation, she saw no need to present further evidence of deprivation.

Following this exchange, the trial court found that there was clear and convincing evidence that the children were deprived and in need of protection by the State. Accordingly, the court gave temporary custody to DFACS, who placed the children in foster care.

At a dispositional hearing held two months later, the appellant, who was assisted by an interpreter and new counsel, asserted for the first time that he did not understand the meaning of a "stipulation" and, therefore, was denied the opportunity to defend himself against M. O.'s accusations during the prior adjudication hearing. However, he admitted that his counsel told him he would have a chance to defend himself during any possible future criminal proceedings and, therefore, they jointly decided not to put up any evidence during the deprivation hearing. The trial court stated that the prior adjudication had been concluded and would not be reconsidered at that time.

The appellant subsequently filed a motion for reconsideration or, alternatively, a new trial; the motion was denied. This appeal followed. *Held*:

1. In his first enumeration of error, the appellant asserts that the trial court erred in not ensuring that he knew what a "stipulation" was and what facts he was stipulating to. Inherently, this assertion seems to indicate that the court's efforts in providing two interpreters and allowing the assistance of the appellant's friend somehow was inadequate to protect the appellant's interests. However, the appellant fails to indicate how the court could have been able to "insure" that a party understands the proceedings beyond providing the protections available in this case. Accordingly, we find no merit to this enumeration.

Further, the transcripts of both the adjudicatory and dispositional hearings clearly show that the appellant's counsel consulted with him prior to making such stipulation. If the appellant was unclear as to the meaning or effect of a "stipulation," he has failed to

show any evidence of such misunderstanding in the record beyond his belated assertion at the subsequent dispositional hearing. See Court of Appeals Rule 27 (c) (3) (i). Therefore, the appellant is bound to the stipulation.

In a civil proceeding, "[i]t is well settled that clients are bound by statements of their attorneys made in open court" when such statements are made in the client's presence and are not denied by the client. (Citations omitted.) *N. A. A. C. P. v. Pye*, 96 Ga. App. 685, 686 (101 SE2d 609) (1957). See also *Sunn v. Mercury Marine*, 166 Ga. App. 567, 570 (2) (305 SE2d 6) (1983); *McCoy v. McSorley*, 119 Ga. App. 603, 604 (2) (168 SE2d 202) (1969); cf. *134 Baker Street v. State*, 172 Ga. App. 738, 741 (5) (324 SE2d 575) (1984) (limiting the effect of such statements in a criminal case). This is particularly true when, as in this case, the statements are *"made for the express purpose of dispensing with formal proof."* (Citations and punctuation omitted; emphasis in original.) *Whatley v. State*, 189 Ga. App. 173, 175 (375 SE2d 245) (1988); see also *Jabaley v. Jabaley*, 208 Ga. App. 179 (1) (430 SE2d 119) (1993).

In this case, the stipulation was an admission in judicio that there was sufficient evidence presented during the hearing to support a finding that the children were deprived, even if the appellant had presented a comprehensive defense.[2] See OCGA § 15-11-33 (b) (requiring the evidence of deprivation to be "clear and convincing" before a court may transfer custody of a child); see also OCGA §§ 15-11-2 (8); 15-11-34 (a); *In re Suggs*, 249 Ga. 365 (291 SE2d 233) (1982). Such admission in judicio is conclusive and "binding upon the party and estops the party from denying the admission or introducing any evidence to controvert such admission, even if the admission is not true. . . . Failure to comprehend the legal effect of making an admission provides no excuse for the maker; 'ignorance of the law excuses no one.' " (Citations and punctuation omitted.) *Jabaley v. Jabaley*, supra at 179-180; OCGA § 1-3-6.

In addition, "[t]he strong presumption arises from an attorney's appearance in court on behalf of a litigant that he is authorized to appear and to act for that party. . . . In absence of express restrictions on the attorney's authority in the contract of employment, the authority is plenary. Acts of an attorney on behalf of a party cannot be questioned unless *wholly unauthorized* and then only if the aggrieved party is not guilty of unreasonable delay in acting to correct the improper acts after notice or knowledge of them." (Citations

---

[2] Although the appellant understandably expressed extreme concern that the stipulations might be used to "condemn" him in a future criminal action, this Court recognizes that the trial court, in accepting such stipulation, expressly found that the appellant was *not* admitting that the facts as alleged by M. O. were true.

omitted; emphasis in original.) *McCoy v. McSorley*, supra at 604 (2). Accordingly, under the circumstances of this case, there was no error.

2. (a) In his second enumeration, the appellant contends that the court erred in denying his motion for new trial without conducting a hearing or setting forth reasons for its denial in the order. See *In the Interest of T. A. W.*, 265 Ga. 106, 107 (454 SE2d 134) (1995) (holding that juvenile courts, as courts of record, are authorized to grant new trials). However, pursuant to our decision in Division 1, supra, the appellant has not stated grounds for a new trial under OCGA § 5-5-1 et seq. Further, the trial court's decision to deny a motion for new trial will not be reversed absent an abuse of discretion. OCGA § 5-5-25. We find no abuse of discretion.

(b) The appellant also asserts that his motion for new trial could be construed as a modification petition under OCGA § 15-11-42. Without deciding whether the appellant's motion reasonably could be construed in this manner, particularly in light of the "clear and concise language" requirement of OCGA § 15-11-42 (c), we find that the appellant did not present grounds for such modification.

In his motion for new trial, the appellant asserted that he did not "understand" the meaning or significance of the stipulation entered on his behalf and, therefore, he was entitled to another opportunity to present evidence on the merits of this case. We rejected this argument in Division 1, supra, as a ground for reversal of the court's order and, further, find that such alleged lack of understanding does not present grounds for a modification based upon "mistake" under OCGA § 15-11-42 (a) (1) as a matter of law. See generally *Robbins v. Nat. Bank of Ga.*, 241 Ga. 538, 543-544 (246 SE2d 660) (1978) (holding that a mistake by a party as to the legal effect of an agreement or act is not grounds for setting aside a judgment under OCGA § 9-11-60 (d) (2)). Accordingly, there was no harm in the trial court's failure to conduct a hearing on the appellant's motion.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 26, 1998.

*Hurl R. Taylor, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Nardone & Read, Robert G. Nardone, Dorothy V. Murphy*, for appellees.